# SIMPLE INTEREST NOTE and SECURITY AGREEMENT

No. _____

$ __16329.67__ City __SACRAMENTO__ , Date __22 FEB__ , 20__14__

For value received, the undersigned (hereinafter jointly and severally called the "Borrower") promise(s) to pay to the order of __FIFTH THIRD BANK__ (Name of Bank) (hereinafter called the "Bank"), the principal amount of __SIXTEEN THOUSAND THREE HUNDRED TWENTY NINE AND 67/100__ dollars, together with interest, the total of payments in the number and amounts and on the due dates shown in the payment schedule below (subject to change if variable rate note). The interest will begin on the date of the Note and Security Agreement at the annual rate of __1.490__ %.

☐ The interest rate is subject to change as provided herein. Under no circumstances shall the interest rate be raised above 25% in Ohio *(Variable Rate).

☒ The interest rate is not subject to change.

Payable at the Bank, __FIFTH THIRD BANK__ __PO BOX 997548 SACRAMENTO CA 95899-7548__ (Address)

Loan Fee: Borrower agrees to pay a non-refundable loan fee of $ __195.00__

## TRUTH IN LENDING ACT DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you if you pay as scheduled. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 1.94 % | $ 862.73 | $ 16134.67 | $ 16997.40 (e) |

Your payment schedule will be:

| Number of Payments (e) | Amount of Payments | When Payments Are Due |
|---|---|---|
| 63 | $ 269.80 | Monthly on the 8TH Day of Each Month Starting 08 APR 2014 |
| | $ | |

REV 5/07

*Variable Rate: The Annual Percentage Rate may increase or decrease during the term of this transaction. Your interest rate will be computed based on an index equal to the highest Prime Rate as set forth in the Wall Street Journal on the business day immediately prior to the first business day of January, April, July, and October (the "Index Date") plus or minus a margin equal to the difference between your initial interest rate and said Prime Rate on the Index Date preceding the date of your loan. The effective date of each interest rate change will be the first business day following the Index Date (the "Change Date"). The INTEREST RATE will change only if there has been a change in the index in the quarter preceding a Change Date. The INTEREST RATE will not increase or decrease more than 1.5% per year and will not increase or decrease more than 6% during the term of the loan. If your INTEREST RATE has reached one of these limits it will not change again until the next Change Date following a change in the index after you become eligible for an increase or decrease. Any change in the INTEREST RATE will take the form of more or less payments of the same amount (as the case may be) unless this loan is for more than 60 months, in which case any increase may take the form of more payments of the same amount, or higher payment amounts, or both, at the Bank's discretion. If your loan was for $6000.00 at 15% for 36 months with a monthly payment of $173.33, and the INTEREST RATE increased to 16.5% after six months, you would have to make one additional partial payment of $115.26. If your loan was for $10,000.00 at 15% for 120 months with a monthly payment of $161.33, and the INTEREST RATE increased to 16.5% after 12 months, and if the Bank so determined, you would pay your loan on schedule, but your remaining 108 regular payments would increase to $163.39 each.

Property Insurance may be obtained from anyone you desire that is acceptable to the Bank.

Security: To secure the loan, you are giving Bank a security interest in your deposit accounts, all collateral securing other loans with Bank and:

☒ The goods or property being purchased.
☐ _____

NOTE: Collateral securing other loans with bank may also secure this loan. (Brief description of other property).

**Late Charges:** If a payment is more than 10 days late you will be charged 10% of the payment amount with a minimum of $35.00.
**Prepayment Penalty:** If you pay off this note early, you may have to pay a penalty.
**Required Deposit:** The Annual Percentage Rate does not reflect the effect of any required deposit.

This is a two page agreement. See other provisions hereof and any other contract documents for further information about non-payment, default, the right to accelerate the maturity of the obligation, prepayment penalty and security interests.
(e) means an estimate.

## INSURANCE

Credit life insurance and credit disability insurance are not required to obtain credit.
Credit insurance is available from _____
(ADDRESS)

No credit insurance will be provided unless you sign below and the premium costs shown below are included in the Amount Financed and paid. (See the Notice of Proposed Credit Insurance on the reverse side).

| Type | Premium | Signature | |
|---|---|---|---|
| Single Credit Life | $ N/A | I want credit life insurance _____ | (Named Insured) |
| Joint Credit Life | $ N/A | We want credit life insurance _____ | (Named Insured) |
| Credit Disability | $ N/A | I want credit disability insurance _____ | (Named Insured) |

Borrower authorizes the payments listed below:

## ITEMIZATION OF THE AMOUNT FINANCED

Itemization of the amount financed of $ __16134.67__
1. $ __N/A__ Amount given to you directly.
2. $ __N/A__ Amount paid on your account with the Bank.
3. $ __16329.67__ Amount(s) paid to others on your behalf (Total a through l). (Seller and/or Bank may be retaining a portion of this amount).
   a) $ __N/A__ for Credit Life and/or Credit Disability Insurance.
   b) $ __46.80__ to Public Officials.
   c) $ __N/A__ for Title Examination (Paid To _____ ).
   d) $ __N/A__ _____
   e) $ __N/A__ for Document Preparation (Paid To Bank).
   f) $ __N/A__ for Single Interest Insurance.
   g) $ __195.00__ for Loan Fee (Paid To Bank).
   h) $ __16087.87__ __HYUNDAI OF BEDFORD-BEDFORD MITSU__ (Seller's Name)
   i) $ __N/A__ for Extended Warranty Protection (Paid To _____ ). (Seller's Name)
4. $ __195.00__ Prepaid finance charge.
5. $ __16134.67__ Total amount financed (Total of 1 through 3 minus 4).

**Single Interest Insurance:** Single Interest Insurance is required, but you may obtain it from anyone who is acceptable to the Bank. The cost for the term is shown above in item 3f. This contract does not include coverage for bodily injury and property damage caused to others, nor does it protect your interest in the collateral from any loss or damage.

**SECURITY AGREEMENT:** To secure payment of this liability to Bank and the performance of any obligations you now or in the future have, you give Bank a security interest in the property described as security above, any other property now or hereafter in Bank's possession, any rights to the payment of money from Bank, the items of property defined on the reverse side hereof, any credit insurance proceeds and refunds and the following described property:

| Year | Trade Name | Model No. or Name | Body Type | Serial No. |
|---|---|---|---|---|
| 2013 | HYUNDAI | ELANTRA | SD | KMHDH4AE9DU957393 |

Other Property _____

together with all replacements thereof and all attachments, accessories and equipment now or hereafter attached, added or affixed thereto (The property securing this Note is hereinafter called "Collateral"). THIS AGREEMENT IS SUBJECT TO THE ADDITIONAL PROVISIONS SET FORTH ON THE REVERSE SIDE HEREOF, THE SAME BEING INCORPORATED HEREIN BY REFERENCE, AND IS ALSO SUBJECT TO THE TERMS AND PROVISIONS SET FORTH IN THE BUYER'S RESIDUAL VALUE AGREEMENT, IF APPLICABLE, ATTACHED HERETO AND INCORPORATED BY REFERENCE. Any part of this Note and Security Agreement contrary to the laws of any state having jurisdiction with respect thereto shall be deemed null and void and hereby is waived but shall not invalidate other parts of this Note and Security Agreement in said state.

The undersigned hereby severally waive presentment, demand for payment, protest, notice of protest and notice of nonpayment of this Note.

**BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS NOTE and SECURITY AGREEMENT AND THE ABOVE INFORMATION AT THE TIME OF SIGNING.** The Annual Percentage Rate may be negotiated with the Seller.

## NOTICE TO COSIGNER

You are being asked to become liable on this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The BANK can collect this debt from you without first trying to collect from the borrower. The BANK can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If the debt is ever in default, that fact may become a part of YOUR credit record.

(GIVE COMPLETE NAMES AND ADDRESSES)      SIGNATURES (WRITE IN FULL AND IN INK)

__BRIAN P MURPHY__

_____ (BORROWER)

_____ (BORROWER)

08402OH (5/07)     A FIFTH THIRD BANCORP BANK

addition to all other rights and remedies of Bank given by law or the terms of this Note and Security Agreement, Borrower promises to pay to Bank a delinquent charge of 10% of the payment amount with a minimum of $35.00. Acceptance of such delinquent charge by Bank shall not constitute a waiver of any default or any rights of Bank hereunder.

2. PREPAYMENT CHARGE: Borrower may prepay the obligation under this Note and Security Agreement in full at any time prior to maturity. If the Collateral securing the obligation is real estate or a mobile home, Borrower agrees to pay an early payment charge of 1% of the outstanding principal amount of the obligation if the Borrower prepays in full within five years of the date of the Note. If the Collateral is not real estate nor a mobile home, or if the obligation is unsecured, Borrower agrees to pay an early payment charge of 1% of the outstanding principal balance with a minimum charge of $130.00 if Borrower prepays in full more than six months prior to the scheduled final payment date. Partial prepayment shall not excuse any subsequent payment due.

3. INTEREST AFTER MATURITY: Interest after maturity shall continue at the rate then in effect or as thereafter adjusted in accordance with the variable rate disclosures. In addition, after maturity or other default, Borrower agrees to pay Bank a fixed charge of $25.00 or Borrower agrees that Bank may, without notice, increase the interest rate by 6% per annum, whichever is greater.

4. SECURITY: Borrower hereby assigns to Bank and agrees that Bank shall have a lien upon and security interest in any and all accounts, balances, credits, deposits or other monies of or in the name of Borrower or another or others now or hereafter with Bank.

5. RETURNED CHECK FEE: A fee of $35.00 may, at Bank's discretion, be imposed whenever a check offered in payment on this Note is returned to the Bank unpaid for any reason. This fee is subject to change without notice to the Borrower, and the Borrower agrees to pay the fee actually charged by Bank at the time the check is returned.

6. LEGAL PROCESS: Borrower agrees that if Bank is sued or otherwise directed to respond to any civil, criminal or administrative demand relating to the loan evidenced hereby (including but not limited to, the amount due, any collateral, or the underlying transaction) Borrower will pay Bank, upon request, an administrative fee of $28 per hour and $.25 per copy to comply with such demand. Borrower also agrees that any amount not paid within fifteen days of Bank's request may be added to the principal amount of the remaining indebtedness subject to the rate of interest on the Note until paid.

7. Borrower warrants and agrees that if the Collateral is, or will be affixed to realty, Borrower will, upon demand, furnish Bank with a disclaimer, signed by all persons having an interest in the real estate, of any interest in the Collateral.

8. Borrower has executed a mortgage granting Bank a lien in the Collateral if the Collateral is real property.

9. Borrower agrees that:

   a. Borrower will be responsible for any loss of, or damage to, the Collateral and will maintain and keep the same in good repair and condition, in default of which Bank may, at its option, maintain and repair the Collateral and add the cost thereof to the obligation secured. Borrower will promptly, upon demand, reimburse Bank for the cost of any such maintenance or repairs.
   b. Borrower will not, without the prior written consent of Bank, move the Collateral from the county in which it is to be located, and will promptly notify Bank of any change in Borrower's residence or any of the Borrower's places of business.
   c. Borrower will buy property insurance on the Collateral protecting against loss or physical damage and subject to a maximum deductible of $500.00, or as Bank shall otherwise require. Borrower will name Bank as loss payee on any such policy. In the event of loss or damage to the Collateral, Bank may require additional security or assurances of payment before allowing insurance proceeds to be used to repair or replace the Collateral. Borrower agrees that if the insurance proceeds do not cover the amounts still owed on this Note and Security Agreement, Borrower will pay the difference. Borrower may purchase or provide the insurance through any insurance company reasonably acceptable to Bank. Borrower will keep the insurance in full force and effect until the amounts due on this Note and Security Agreement are paid in full. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Bank. Borrower grants Bank power of attorney to make, adjust and settle claims and to endorse drafts and collect proceeds under this insurance.
   d. Unless Borrower provides Bank with evidence of the insurance coverage required by Borrower's agreement with Bank, Bank may purchase insurance at Borrower's expense to protect Bank's interests in the Collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Bank purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the Collateral. Borrower may later cancel any insurance purchased by Bank, but only after providing Bank with evidence that Borrower has obtained insurance as required by Borrower's agreement with Bank. If Bank purchases insurance for the Collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Bank may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own. Borrower's payment may be increased to provide for payment of the costs of insurance plus interest thereon.

10. OTHER SECURITY: Borrower agrees that any present or future agreement, securing any other debt Borrower owes Bank, will also secure the payment of this Note and Security Agreement. However, an agreement securing any other debt will not secure this Note and Security Agreement if either of the following applies:
    a. Bank fails to make a disclosure required by law of the existence of such security agreement, or
    b. Bank fails to provide (to any person entitled) any notice of right of rescission required by law for this transaction.

11. DEFAULTS: Upon the occurrence of any of the following described events, each of which will constitute a default, Bank shall have all rights and remedies provided by law, and without limiting the generality of the foregoing, shall include the election to accelerate without notice or demand the final maturity of all of the obligations secured:

    a. The nonpayment, when the same shall be due, of any installment or other payment on account of the principal or interest of this Note;
    b. The breach of any warranty or agreement by Borrower herein contained, or contained in any mortgage or security agreement executed by Borrower in connection herewith;
    c. The death or incompetency of any individual Borrower, or, if Borrower is a partnership, of a partner;
    d. the default of Borrower under the terms of any lease of, or mortgage on, the premises upon which the Collateral may be located;
    e. Any assignment for the benefit of the creditors or the commencement of any bankruptcy, receivership, reorganization, foreclosure, insolvency or liquidation proceedings by or against the Borrower, or if Borrower is a partnership, by an agreement as partner;
    f. The reasonable determination by Bank at any time that it is inadequately secured hereby with respect to the obligation; or
    g. The creation of any other lien or the issuance of any attachment against the Collateral or the entry of judgment against Borrower;
    h. The occurrence of a default under any other obligation of Borrower, individually or jointly, to Bank;
    i. Seizure, levy or confiscation under any legal or governmental process against the collateral.

    In the event of a default, Borrower agrees on demand to deliver Collateral to Bank, and Bank may, without notice or demand and without legal process, enter upon the premises of Borrower and take possession of the Collateral on said premises or wherever found. Further, Borrower agrees to pay and remains liable to Bank for any costs of disposition of the Collateral as well as for reasonable attorneys' fees, court costs and any and every deficiency after the proceeds from the sale of the Collateral are applied as provided by the Uniform Commercial Code as enacted in the state governing this instrument.

12. No failure on the part of Bank to exercise any of its rights hereunder shall be deemed a waiver of such rights or of any default.

13. As used herein, "Borrower" if there be more than one, shall mean "all the Borrowers and each or any of them" and in such case they are jointly and severally bound hereby.

14. A carbon, photographic or other reproduction of this Note and Security Agreement or a financing statement is sufficient as a financing statement.

15. In no event shall the interest rate due hereunder exceed the maximum rate of interest under applicable state or federal usury laws.

16. This Note and Security Agreement, the amounts contracted for and the interest to be charged shall be governed by, and construed and interpreted in accordance with, the laws of the State of Ohio, without regard to its conflict of law principles, and applicable federal laws and regulations, and the obligations, rights and remedies of the parties shall be determined in accordance with such laws.

---

**NOTICE OF PROPOSED CREDIT INSURANCE-OHIO RESIDENTS ONLY**

This notice applies only if Borrower(s) chose to obtain group credit life or group credit disability insurance. The type of insurance, the premium and the name and address of the insurance company are indicated on the front of this Note and Security Agreement. This insurance, subject to acceptance by the insurer, covers only the person(s) who signed the request for insurance. Only the named insured will be covered under credit disability insurance. The term of insurance will commence on the date the indebtedness is incurred and will expire on the original maturity date of this Note, unless terminated earlier as provided for in the Certificate of Insurance. Credit life insurance insures the scheduled unpaid balance on the date of death. Credit disability insurance insures each regular installment payment while the insured is disabled. Credit disability insurance monthly coverage is limited to the originally scheduled monthly payment or the policy limitation. If the insurance is accepted by the insurer, a Certificate of Insurance which describes the insurance coverage Borrower(s) have obtained will be delivered to Borrower(s) within 30 days. In the event of termination of the insurance prior to the scheduled maturity date of the indebtedness, any refund of an amount paid by the Borrower(s) for insurance shall be credited promptly to the Borrower(s) account. Borrower(s) must refer to the Certificate of Insurance for the complete terms and conditions of Borrower(s) insurance.

---

The following notice is applicable if this agreement involves a purchase of goods or services to which the FTC HOLDER IN DUE COURSE RULE applies.

---

IF THE COLLATERAL IS TO BE USED PRIMARILY FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES:
NOTICE
ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF THE GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

If you believe information we report about the credit history on your account(s) is incomplete, inaccurate or outdated, you must provide us with clear written documentation including the name on the account, the account number and the nature of the disputed information. Please write to us at:

Fifth Third Bank
38 Fountain Square Plaza
Post Office Box 639090

Perfected

## Account                                                                                               Actions»

VIN/HIN: **KMHDH4AE9DU957393**   Status: **Perfected (PT)**   Titling State: **OH**   Year: **2013**
Account:            Loan:            LoanSuffix:   Branch:       Make: **HYUNDAI**   Model: **ELANATRA**   **LOAN**

### Overview

- Primary customer: **MURPHY, BRIAN P**
- Secondary customer:
- Home phone:
- Address:
- Alert when perfected: ☐ Client  ☐ CMS
- Originator:
- User Defined 2:
- User Defined 3:
- Lienholder Status Code:
- Business Unit: **(FifthThird) Fifth Third**
- Dealer ID/Name:       **MIGDAL 1, LLC**

- Recovery type:
- Amount Financed:
- Financed date: **02/22/2014**
- Booked date:
- Expected payoff date:
- Payoff date:
- Perfected date: **3/14/2014**
- State: **OH**
- Account subtype: **Loan - Dealer Indirect (D)**
- Expected Contract Type:

### Customers

|      | Order | Order | Name            | Type   | Home Phone | Business Phone | Address |
|------|-------|-------|-----------------|--------|------------|----------------|---------|
| Edit | 1     | ▼     | MURPHY, BRIAN P | PERSON |            |                |         |

### Property

| VIN/HIN            | Make    | Model    | Year | Damaged? | Insurance Total Loss? | Account Collateral Type |
|--------------------|---------|----------|------|----------|----------------------|-------------------------|
| KMHDH4AE9DU957393  | HYUNDAI | ELANATRA | 2013 | ☐        | ☐                    | VEH                     |

### Dealer Info

- ID:
- Name: **MIGDAL 1, LLC**
- Address: **18300 ROCKSIDE RD BEDFORD, OH 44146**
- Phone:
- Fax:
- EMail:

- Type: **DEALER**
- Status: **ACTIVE**
- Dealership:
- Contact Name:
- Contact Phone:
- Note:

### Lien Filing

### Release

### Duplicate Title

- Request Date:          Action Date:
- Status:                Last Worked By:
- State:                 Required State Forms:
- Reason:                Requesting Dept:
- Operations Code:       Billable: ☐

### Follow Up

Client Activities

- Direct Lending Services
- Additional Documents
  Additional Documents do not exist for this account
- Obsolete Docs

| Title | Actions» |

VIN/HIN: **KMHDH4AE9DU957393**   State: **OH**   Title Number: ▮   **Title-Electronic**
Year: **2013**   Make/Builder: **HYUN**   Model:   **Perfecting**

- Overview
  - Owner(s): **BRIAN P MURPHY**   Closed Date:
  - Lienholder: **FIFTH THIRD BANK**   Closed Reason:
  - Match Type: **AUTOMATIC**   Document Location:
  - Match Date: **3/14/2014**
  - Issuance Date:
  - Imported Date: **3/14/2014**

- Owners
- Property
- Liens

| Name | Address | Lienholder ID | Lien Date |
|---|---|---|---|
| FIFTH THIRD BANK | P. O. BOX 997548 SACRAMENTO, CA 95899 | ▮ | 3/13/2014 |

[dd Second Lien]

- Title Maint